UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

LYNNE MARIE SCOLARO JONES,

     Plaintiff,

v.

NCL (BAHAMAS) LTD.,

     Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, LYNNE MARIE SCOLARO JONES, sues Defendant, NCL (BAHAMAS) LTD., and alleges:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff, LYNNE MARIE SCOLARO JONES, is a U.S. citizen and citizen and resident of New York.

2. Defendant, NCL (BAHAMAS) LTD. (hereinafter "Defendant" or "NCL"), is a foreign entity incorporated in Bermuda with its principal place of business in Miami, Florida.

3. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 as the Parties to this action are completely diverse and the damages and injuries sustained by Plaintiff as alleged below support an award of damages in excess of $75,000.00, exclusive of interest and costs. In the alternative, if diversity jurisdiction does not apply, then this matter falls under the Court's admiralty and maritime jurisdiction.

4. NCL, at all material times, personally or through an agent:

   a. Operated, conducted, engaged in or carried on a business venture in this state and/or

   county or had an office or agency in this state and/or county;

   b.  Was engaged in substantial activity within this state;

   c.  Operated vessels in the waters of this State;

   d.  Committed one or more of the acts stated in Florida Statutes §§ 48.081, 48.181 or 48.193; and/or;

   e.  The acts of NCL set out in this Complaint occurred in whole or in part in this county and/or state.

5.  Defendant is subject to the jurisdiction of the Courts of this State.

6.  The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

## FACTS COMMON TO ALL COUNTS

7.  At all times material hereto, NCL owned, operated, managed, maintained and/or controlled the vessel, *Norwegian Encore* ("the vessel").

8.  At all times material hereto, Defendant created, owned and/or operated the medical facility onboard the vessel.

9.  At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled the medical equipment in the medical facility aboard the vessel.

10. At all times material hereto, Defendant had control and/or the right to control any and all persons working in Defendant's medical department, including the ship's doctors and nurses (at times collectively referred to as the "Medical Staff").

11. At all times material hereto, the Medical Staff were in the regular, full-time employment of the vessel, as salaried members of the crew, subject to the vessel's discipline and the master's orders, and also under the control of Defendant's shoreside medical department located in Miami, Florida, through modern means of communication such as "Face-to-Face

Telemedicine."

12. At all times material hereto, the Medical Staff were employees, actual agents, apparent agents, and/or joint venturers of Defendant, and at all times material hereto, acted within the course and scope of their employment, agency, and/or joint venture relationship.

13. At all material times, NCL charged money to passengers for the medical services it provided to guests. Thereby, NCL is in the business of providing medical services to passengers for profit, and/or NCL is in the business of operating a floating hospital for their own profit. *See, Franza v. Royal Caribbean Cruises, Ltd*., 772 F.3d 1225, 1244 n. 14 (11th Cir. 2014). Herein, NCL charged Plaintiff a fee for the medical treatment performed by the Medical Staff aboard its vessel and for the medicine provided to the Plaintiff. All of the charges for the medical treatment and medicine were charged directly to Plaintiff's onboard credit program (or the equivalent shipboard credit card) linked to NCL.

## SUBJECT INCIDENT

14. On or about June 27, 2023, Plaintiff was a fare-paying passenger lawfully onboard the *Norwegian Encore*, which at all material times NCL operated in navigable waters

15. On or about June 27, 2023, Plaintiff presented to the medical center onboard the vessel complaining of a cough and difficulty sleeping.

16. Following a brief evaluation, the Medical Staff informed Plaintiff she had a fever, and that she was suffering from internal infection.

17. The Medical Staff then administered intravenous (IV) medication to Plaintiff.

18. Shortly after the nurse inserted the IV into Plaintiff's hand, Plaintiff noticed her hand began to swell up like a softball. She informed the nurse, who told Plaintiff that the IV had infiltrated,[1]

---

[1] IV infiltration is a medically induced injury that occurs when some of the fluid in the IV leaks

and then the nurse instead placed the IV into Plaintiff's arm.

19. In addition to the intravenous infusion, the Medical Staff prescribed Plaintiff a host of other medications. In total, the Medical Staff dispensed and/or intravenously administered to Plaintiff six different antibiotics and other medications. The Medical Staff provided Plaintiff with instructions to take the medications dispensed to her, and Plaintiff was discharged from the medical center.

20. Trusting and relying on the expertise of the Medical Staff, Plaintiff took the medications she was dispensed per the Medical Staff's instructions.

21. After returning home from the cruise, Plaintiff's condition deteriorated dramatically over the following weeks. Plaintiff's cough became worse, and she developed swelling in her lower extremities, red itchy dots on her skin, pain in her lower back, and severe fatigue.

22. Plaintiff followed up with her local physicians. For several months, Plaintiff's physicians were unable to determine the cause of Plaintiff's sudden declining health.

23. On October 28, 2023, Plaintiff visited the emergency room after experiencing a bout of extreme fatigue, and upon noticing symptoms of jaundice.

24. After several tests were performed at the hospital, Plaintiff was informed she was experiencing drug-induced liver failure. Plaintiff was diagnosed with acute cholestatic hepatitis and drug induced liver injury ("DILI") and remained hospitalized until November 15, 2023.

25. In an effort to determine the origin of Plaintiff's liver failure, Plaintiff's physicians analyzed the medications she had taken in the months leading up to her hospitalization. The physicians were unable to identify anything remarkable, until Plaintiff mentioned her visit to the medical

---

out into the surrounding tissues under the skin where the IV tube has been placed into the vein. One cause of IV infiltration is too rapid and/or over- delivery of medication.

center onboard the *Norwegian Encore* on June 27, 2023. Upon reviewing the shipboard medical records, Plaintiff's physicians explained that Plaintiff was administered far too much medication in too short a period of time, and determined that her drug-induced liver injury was more likely than not caused by an overprescription of medication by the vessel's Medical Staff.

26. Since Plaintiff was discharged from the hospital, she continues to suffer from impaired liver function. In light of her ongoing symptoms, Plaintiff has been unable to work, and must regularly visit doctors for frequent tests and treatment.

27. The medical treatment Plaintiff received from the Medical Staff aboard the *Norwegian Encore* was mismanaged, inadequate, and fell below the standard of care. The actions of the shipboard Medical Staff on June 27, 2023 directly caused the rapid deterioration of the Plaintiff's liver function, resulting liver failure and ongoing related injuries and/or medical issues.

### COUNT I - VICARIOUS LIABILITY AGAINST NCL
### FOR MEDICAL NEGLIGENCE BASED ON *RESPONDEAT SUPERIOR*

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through twenty-seven (27) as though alleged originally herein.

28. At all times material hereto, the medical personnel were the ship's doctors and nurses aboard the vessel, including the Medical Staff who oversaw the treatment Plaintiff received on June 27, 2023.

29. At all times material hereto, the Medical Staff who oversaw the treatment Plaintiff received on June 27, 2023, were crewmembers, agents, servants and/or employees of NCL.

30. At all times material hereto, NCL was vicariously liable for the negligent acts of the aforementioned Medical Staff who were acting within the scope of their employment and/or agency, in furtherance of the business of the vessel by providing medical care to fare-paying passengers, including Plaintiff, at the time of the subject incident.

31. At all times material hereto, NCL acknowledged that the Medical Staff would act on NCL's behalf, and the medical personnel accepted the undertaking, based on the following:

    a.  The medical personnel worked in the medical facility, which was created, owned and/or operated by NCL.

    b.  NCL's logo and insignias were displayed in various places throughout the medical facility.

    c.  NCL's website publicly described the medical facility in proprietary language, including, but not limited to, "our medical centers…"

    d.  NCL advertised, marketed and promoted that a competent physician and ship's medical center is available in the event passengers need medical care for customary charges. NCL further advertised, marketed and promoted that as a member of Cruise Line International Association, NCL adopted the Cruise Industry Passenger Bill of Rights which guarantees its passengers, including the Plaintiff, the right to have "full-time, professional emergency medical attention."

    e.  NCL billed and collected payments directly from passengers for the medical services provided by the medical personnel, and NCL did so through passengers' onboard accounts with NCL.

    f.  The medical personnel were employed full-time by NCL.

    g.  The medical personnel were paid a salary by NCL.

    h.  The medical personnel wore uniforms and/or nametags, which were provided by NCL and had NCL's name and logo.

    i.  The medical personnel were under the commands of the ship's officers and followed all of the master's rules and regulations.

     j.   The medical personnel spoke to Plaintiff as though they had authority by NCL to render medical treatment to Plaintiff and charge her money for same on NCL's behalf.

32. At all times material hereto, the medical personnel were subject to the control and/or right to control by NCL, based on the allegations set forth in the preceding paragraph, along with the following:

     a.   The medical personnel were employed full-time by NCL, paid a salary by NCL, and worked in the medical facility aboard the vessel which at all times material was created, owned maintained and/or operated by NCL.

     b.   NCL stocked and equipped the medical facility, and as such, the equipment (including diagnostic) and medications necessary for the medical personnel to perform their work was furnished by NCL.

     c.   The medical personnel were subject to NCL's training requirements, medical policies and procedures, and were under the commands of NCL's ship's officers and the master's rules and regulations.

     d.   NCL maintained control over the day-to-day operations and/or duties of the medical personnel.

     e.   NCL had the right to fire the medical personnel.

33. At all times material hereto, NCL's Medical Staff owed Plaintiff a duty to provide reasonable care under the circumstances.

34. At all times material hereto, the Medical Staff who treated Plaintiff onboard the vessel breached their duty to provide reasonable care under the circumstances to Plaintiff through the following acts and/or omissions:

     a.   Failing to provide Plaintiff with adequate medical care and attention;

b. Failing to administer and/or dispense medication to Plaintiff in a manner that was appropriate in type and dosage;

c. Administering medication at too rapid of a rate;

d. Failing to order appropriate tests to properly assess Plaintiff's medical condition;

e. Failing to adequately monitor Plaintiff's medical condition and treatment;

f. Failing to adequately treat Plaintiff's medical condition;

g. Failing to utilize telephone and/or video consultations with appropriate specialists, shipboard or shoreside, during the medical care and treatment of Plaintiff in order to provide her with proper care;

h. Failing to promptly obtain consultations for Plaintiff with appropriate specialists, shipboard or shoreside;

i. Knowingly rendering treatment to Plaintiff while lacking the proper licenses to practice medicine in the jurisdiction and/or location of the vessel;

j. Failing to have proper licenses to practice medicine in the jurisdiction and/or location of the vessel; and/or

k. Breaching the prevailing professional standard of care for health care providers (i.e., the level of care, skill and treatment that, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by a reasonably prudent similar health care provider).

35. As a direct and proximate result of the negligence of the Medical Staff, as described above, for which NCL is vicariously liable under the legal principles under *respondeat superior* and the principles set forth in *Franza v. Royal Caribbean Cruise Ltd.*, 772 F.3d 1225 (11th Cir. 2014), the Plaintiff was unable to obtain proper and adequate medical care, which caused Plaintiff to

develop devastating and life altering injuries. But for the negligence of the Medical Staff, it is more likely than not she would not have developed drug-induced liver failure and the related injuries complained of herein.

36. As a direct and proximate result of the Medical Staff's negligence, for which NCL is vicariously liable, Plaintiff was injured about her body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, past and future lost earnings and lost earning capacity. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against NCL for compensatory damages, interest, court costs, and all other relief recoverable under general maritime law or as this Court deems just and proper.

**COUNT II**
**VICARIOUS LIABILITY AGAINST NCL FOR MEDICAL**
**NEGLIGENCE BASED ON APPARENT AGENCY**

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through twenty-seven (27) as though alleged originally herein.

37. At all times material hereto, the medical personnel were the ship's doctors and nurses aboard the vessel, including the Medical Staff who oversaw the treatment Plaintiff received on June 27, 2023.

38. At all times material hereto, NCL acknowledged that the medical personnel would act on NCL's behalf, and the medical personnel accepted the undertaking, based on the following:

a. The medical personnel worked in the medical facility, which was created, owned and/or operated by NCL.

b. NCL's logo and insignias were displayed in various places throughout the medical facility.

c. NCL's website publicly described the medical facility in proprietary language, including, but not limited to, "our medical centers…"

d. NCL billed and collected payments directly from passengers for the medical services provided by the medical personnel, and NCL did so through passengers' onboard accounts with NCL.

e. The medical personnel were employed full-time by NCL.

f. The medical personnel were paid a salary by NCL.

g. The medical personnel wore uniforms and/or nametags, which were provided by NCL and had NCL's name and logo.

h. The medical personnel were under the commands of the ship's officers and followed all of the master's rules and regulations.

i. The medical personnel spoke to Plaintiff as though they had authority by NCL to render medical treatment to Plaintiff and on NCL's behalf.

39. At all times material hereto, Plaintiff reasonably relied on the above, to her detriment, so as to believe that the medical personnel were the agents and/or employees of NCL in choosing to cruise aboard the vessel, seek medical attention at the vessel's medical facility, and receive medical treatment from the medical personnel aboard same.

40. At all times material hereto, it was reasonable for Plaintiff to believe that the medical personnel were authorized to render medical services to Plaintiff on NCL's behalf because the Medical

Staff communicated to Plaintiff and provided he medical care as if they had authority to do so on NCL's behalf, the Medical Staff charged Plaintiff for the medical care provided on NCL's behalf, NCL's logo and insignias were displayed in various places throughout the medical facility, and/or NCL's name and logo were on the medical personnel's uniforms and/or nametags.  It was also reasonable because NCL advertised, marketed and promoted that a competent physician and ship's medical center is available in the event passengers need medical care for customary charges, in a manner so as to induce passengers, like Plaintiff, to buy cruises aboard NCL's vessels and utilize its medical facility.  NCL further advertised, marketed and promoted that as a member of Cruise Line International Association, NCL adopted the Cruise Industry Passenger Bill of Rights which guarantees its passengers, including the Plaintiff, the right to have "full-time, professional emergency medical attention."

41. At all times material hereto, Plaintiff's reasonable reliance was detrimental because, had Plaintiff known that the Medical Staff were not NCL's agents and/or employees, Plaintiff would not have selected the cruise, sought treatment from the Medical Personnel, trusted the treatment from the Medical Personnel, and/or received improper medical treatment.

42. At all times material hereto, NCL had a duty to provide reasonable care under the circumstances, including through the conduct of its apparent agents.

43. At all times material hereto, NCL breached its duty to provide reasonable care under the circumstances through the following acts and/or omissions of its apparent agents, the Medical Staff:

    a.  Failing to provide Plaintiff with adequate medical care and attention;

    b.  Failing to administer and/or dispense medication to Plaintiff in a manner that was appropriate in type and dosage;

c. Administering medication at too rapid of a rate;

d. Failing to order appropriate tests to assess Plaintiff's medical condition;

e. Failing to adequately monitor Plaintiff's medical condition and treatment;

f. Failing to adequately treat Plaintiff's medical condition;

g. Failing to utilize telephone and/or video consultations with appropriate specialists, shipboard or shoreside, during the medical care and treatment of Plaintiff in order to provide her with proper care;

h. Failing to promptly obtain consultations for Plaintiff with appropriate specialists, shipboard or shoreside;

i. Knowingly rendering treatment to Plaintiff while lacking the proper licenses to practice medicine in the jurisdiction and/or location of the vessel;

j. Failing to have proper licenses to practice medicine in the jurisdiction and/or location of the vessel; and/or

k. Breaching the prevailing professional standard of care for health care providers (i.e., the level of care, skill and treatment that, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by a reasonably prudent similar health care provider).

44. As a direct and proximate result of the negligence of the Medical Staff, as described above, for which NCL is vicariously liable under a theory of apparent agency and the principles set forth in *Franza v. Royal Caribbean Cruise Ltd.*, 772 F.3d 1225 (11th Cir. 2014), the Plaintiff was unable to obtain proper and adequate medical care, which caused Plaintiff to develop devastating and life altering injuries. But for the negligence of the Medical Staff, it is more likely than not she would not have developed drug-induced liver failure and the injuries

complained of herein.

45. As a direct and proximate result of the Medical Staff's negligence, for which NCL is vicariously liable, Plaintiff was injured about her body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, past and future lost earnings and lost earning capacity. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against the NCL, for compensatory damages, interest, court costs, and all other relief recoverable under general maritime law or as this Court deems just and proper.

## COUNT III - VICARIOUS LIABILITY AGAINST NCL FOR MEDICAL NEGLIGENCE BASED ON JOINT VENTURE

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through twenty-seven (27) as though alleged originally herein.

46. At all times material hereto, the ship's doctors and nurses served as medical personnel aboard the vessel.

47. At all times material hereto, NCL and the Medical Staff had the intention to engage in a joint venture to provide medical services to NCL's passengers. The intention was established by verbal agreement and/or conduct. The common purpose of the venture was to profit from providing medical services to NCL's passengers.

48. At all times material hereto, NCL and the Medical Staff had joint control or right of control over the medical care and services provided to passengers, as follows:

a.  As its part of the joint venture, NCL controlled and oversaw certain aspects of the day-to-day operations of the medical facility and medical personnel aboard the vessel. For instance, NCL's shoreside medical department monitored and supervised the ship's doctors and nurses through its shoreside orientation trainings, standard operating procedures, and/or other standards, policies, procedures and guidelines the Medical Staff were required to follow.  NCL ordered and restocked the medical supplies and medicine, and it ordered and maintained the medical equipment.  NCL had control over the billings and collections for the vessel's medical facility.  NCL provided approval and/or authorization on proposed medical evacuations.  NCL provided medical consultations to passengers from shoreside doctors.  NCL controlled and/or had the right to control the marketing of its medical facility and/or the ship's doctors/ nurses.

b.  As their part of the joint venture, the Medical Staff controlled and oversaw certain aspects of the day-to-day operations of the medical facility and medical personnel aboard the vessel.  For instance, the ship's doctors and nurses provided the labor through their consultations, treatment and care to passengers aboard the vessel so as to generate charges to passengers.  The ship's doctors/ship's nurses initiated and/or requested medical evacuations for passengers.  The ship's doctors completed and/or oversaw the medical personnel's completion of medical records.

49. At all times material hereto, NCL and the Medical Staff shared a joint proprietary or ownership interest in the vessel's medical facility.  NCL had an interest in recommending, marketing, and operating the vessel's medical facility as well as billing and collecting payment for the medical services provided to passengers aboard the vessel.  The Medical Staff had a proprietary interest in the time and labor expended in operating the vessel's medical facility.

50. At all times material hereto, NCL and the Medical Staff had the duty to share the profits and the losses of the joint venture based on the circumstances of their agreement.  NCL and the Medical Staff relied on a single billing system and a unified strategy of NCL's marketing and advertisements.  NCL and the Medical Staff shared profits and losses, and they split revenue from medical services and supplies rendered to NCL's thousands of cruise passengers.  The ship's doctors had the sole discretion to render medical care, treatment and services to passengers and to sell prescription medication and medical supplies to passengers; and the Medical Staff increased profits by rendering medical care, treatment and services to passengers and by prescribing passengers medications and supplies.  NCL's compensation for the medical personnel was dependent, at least in part, on the medical facility's revenues; and the medical facility's revenues depended, at least in part, on the recommendations and prescriptions the ship's doctors provided to passengers.  Further, in Florida, a duty to share losses actually and impliedly exists as a matter of law where one party supplies the labor, experience and skill (like the Medical Staff), and the other the necessary capital (like NCL).

51. At all times material hereto, NCL had a duty to provide Plaintiff with reasonable care under the circumstances, including through the acts of its joint venturers.

52. At all times material hereto, NCL breached its duty to provide reasonable care under the circumstances through the following acts and/or omissions of its joint venturers, the Medical Staff who treated Plaintiff on June 27, 2023:

    a.  Failing to provide Plaintiff with adequate medical care and attention;

    b.  Failing to administer and/or dispense medication to Plaintiff in a manner that was appropriate in type and dosage;

    c.  Administering medication at too rapid of a rate;

d.   Failing to order appropriate tests to assess Plaintiff's medical condition;

e.   Failing to adequately monitor Plaintiff's medical condition and treatment;

f.   Failing to adequately treat Plaintiff's medical condition;

g.   Failing to utilize telephone and/or video consultations with appropriate specialists, shipboard or shoreside, during the medical care and treatment of Plaintiff in order to provide her with proper care;

h.   Failing to promptly obtain consultations for Plaintiff with appropriate specialists, shipboard or shoreside;

i.   Knowingly rendering treatment to Plaintiff while lacking the proper licenses to practice medicine in the jurisdiction and/or location of the vessel;

j.   Failing to have proper licenses to practice medicine in the jurisdiction and/or location of the vessel; and/or

k.   Breaching the prevailing professional standard of care for health care providers (i.e., the level of care, skill and treatment that, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by a reasonably prudent similar health care provider).

53. The above acts and/or omissions caused and/or contributed to Plaintiff's injuries because, had Plaintiff received appropriate care and/or treatment, Plaintiff would not have suffered the injuries complained of herein, including but not limited to a drug-induced liver injury.

54. As a direct and proximate result of the Medical Staff's negligence, for which NCL is vicariously liable, Plaintiff was injured about her body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing

conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, past and future lost earnings and lost earning capacity. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against the NCL, for compensatory damages, interest, court costs, and all other relief recoverable under general maritime law or as this Court deems just and proper.

### COUNT IV – NEGLIGENT PROVISIONING AND/OR EQUIPPING OF MEDICAL FACILITY AGAINST NCL

The Plaintiff realleges, adopts and incorporates by reference the allegations in paragraphs one (1) through twenty-seven (27) as though alleged originally herein.

55. At all times material hereto, it was the duty of NCL to exercise reasonable care to properly man the vessel's medical facilities, to provide the appropriate resources to the medical staff, and to provide reasonable and appropriate equipment, supplies, and medications for the vessel's medical facility.  These duties arise through NCL (a) voluntarily undertaking to provide medical facilities, doctors, nurses and/or other medical staff for passengers aboard its cruise ships; (b) marketing its cruise ships as providing "medical centers [that] meet or exceed the standards established by the Cruise Lines International Association (CLIA) and the American College of Emergency Physicians (ACEP)"; and (c) marketing its cruise ships as having "from one physician and three nurses to as many as two physicians and five nurses."

56. On or about the above date(s), NCL and/or its agents, servants, joint venturers and/or employees breached its duty to exercise reasonable care, based on the following acts and/or omissions:

a.  Failing to have an adequate number of medical employees to handle medical emergencies, as it is unrealistic to have a medical team consisting of two or three doctors and/or two or three nurses to perform all the services required on a ship carrying thousands of passengers and crew; and/or

b.  Failing to supply and/or maintain the vessel's medical facility with operational medical equipment to promptly and/or adequately assess and/or diagnose Plaintiff's medical condition; and/or

c.  Failing to supply adequate and/or proper medication to adequately treat Plaintiff's medical condition; and/or

d.  Failing to supply the vessel's medical facility with resources, such as manuals and treatises, and/or access for contacting medical professionals in the United States for consultation about the care and treatment of significant medical conditions of its passengers, including Plaintiff.

57.  The above acts and/or omissions caused and/or contributed to Plaintiff's injuries because, had Plaintiff received appropriate care and/or treatment at a reasonably provisioned and/or equipped medical facility, Plaintiff would not have suffered the injuries complained of herein, including but not limited to a drug-induced liver injury.

58.  At all times material hereto, NCL knew of the foregoing conditions rendering the medical facility inadequate, or the conditions existed for a sufficient length of time so that NCL, in the exercise of reasonable care under the circumstances, should have learned of them.  This knowledge was or should have been acquired through (a) inventories and/or inspections of the vessel's medical facility conducted by NCL, and/or (b) prior incidents involving ship's doctors and/or nurses providing improper medical treatment to passengers aboard NCL's vessels due,

at least in part, to the inadequate medical facilities. *See, e.g., Begum v. NCL (Bahamas) Ltd.*, et al., Case No. 1:21-cv-20270 (on February 15, 2020, medical personnel onboard NCL vessel provided inadequate treatment and improper medication to cruise passenger, resulting in sepsis); *L'Homme v. NCL (Bahamas) Ltd.,* Case No. *1:20-cv-24718* (on January 20, 2020, medical personnel onboard NCL cruise ship prescribed and administered medication that was improper in type and dosage, resulting in passenger's organ failure); *Watsky v. NCL (Bahamas) Ltd.*, Case No. 1:21-cv-21045 (on October 19, 2019, medical personnel onboard NCL vessel incorrectly catheterized and administered improper medication, resulting in medical complications and aggravation of cruise passenger's condition); *Ford as Next Friend of Doe v. NCL Bahamas Ltd.*, 17-CV-24404, 2019 WL 3937127 (S.D. Fla. June 4, 2019) (alleging medical care provided by Defendant's shipboard medical personnel, including the improper administration of medication, fell below the reasonable care standard). These inventories, inspections and/or prior incidents did or should have revealed the conditions set forth in the preceding paragraph.

59. As a direct and proximate result of NCL's negligence, Plaintiff was injured about her body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, past and future lost earnings, and lost earning capacity. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future.

   **WHEREFORE**, Plaintiff demands judgment for all damages recoverable under the law and demands trial by jury.

## COUNT V – GENERAL NEGLIGENCE

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one

(1) through twenty-seven (27) above, as though alleged originally herein, and further alleges:

60. At all times material, NCL owed Plaintiff a duty to exercise reasonable care under the

circumstances.

61. On or about June 27, 2023, NCL breached its duty to exercise reasonable care under the

circumstances based on the following acts or omissions:

a. Undertaking a duty to provide a medical facility, doctors and nurses aboard its cruise

vessel, and failing to properly manage and/or supervise the medical care NCL's

shipboard doctors and nurses provided to passengers; and/or

b. Undertaking a duty to provide a medical facility and doctors aboard its cruise vessel,

and reasonably use telemedicine between NCL's shoreside medical office and

shipboard office to properly treat passengers, including Plaintiff.

62. At all times material hereto, NCL knew of the foregoing conditions, or the conditions existed

for a sufficient length of time so that Defendant, in the exercise of reasonable care under the

circumstances, should have learned of them.   This knowledge was or should have been

acquired through prior incidents involving NCL's ship's doctors and/or nurses whom provided

improper medical advice and/or treatment to passengers aboard NCL's vessels on previous

occasions. *See, e.g., Begum v. NCL (Bahamas) Ltd*., et al., Case No. 1:21-cv-20270 (on

February 15, 2020, medical personnel onboard NCL vessel provided inadequate treatment and

improper medication to cruise passenger, resulting in sepsis); *L'Homme v. NCL (Bahamas)

Ltd.,* Case No. *1:20-cv-24718* (on January 20, 2020, medical personnel onboard NCL cruise

ship prescribed and administered medication that was improper in type and dosage, resulting

in passenger's organ failure); *Watsky v. NCL (Bahamas) Ltd.*, Case No. 1:21-cv-21045 (on October 19, 2019, medical personnel onboard NCL vessel incorrectly catheterized and administered improper medication, resulting in medical complications and aggravation of cruise passenger's condition); *Ford as Next Friend of Doe v. NCL Bahamas Ltd.*, 17-CV-24404, 2019 WL 3937127 (S.D. Fla. June 4, 2019) (alleging medical care provided by Defendant's shipboard medical personnel, including the improper administration of medication, fell below the reasonable care standard).

63. As a direct and proximate result of NCL's negligent acts and/or omissions set forth in Paragraph 61, Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future.  The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future.

**WHEREFORE,** Plaintiff demands judgment against NCL for all damages recoverable by law, and demands a jury trial of all issues so triable.

## COUNT VI – NEGLIGENT FAILURE TO WARN

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through twenty-seven (27) above, as though alleged originally herein, and further alleges:

64. At all times material, NCL owed Plaintiff a duty to exercise reasonable care under the circumstances. As part of its duty, NCL owed Plaintiff a duty to warn of dangers that were known, or reasonably should have been known, to NCL in places where passengers, including

Plaintiff, were invited or were reasonably expected to visit, including the ship's medical facility and medical services which NCL offered and provided to cruise passengers.

65. On or about June 27, 2023, NCL breached its duty to exercise reasonable care under the circumstances, including the duty to warn Plaintiff of dangers associated with treatment at the vessel's medical center, through the following acts or omissions:

    a.  Failure to warn Plaintiff of the dangers associated with the medications she was administered and prescribed;

    b.  Failure to warn Plaintiff that the ship's Medical Staff lacked the proper licenses and/or were not properly qualified to prescribe and administer medication to passengers, such as Plaintiff, under the circumstances;

    c.  Failure to warn Plaintiff that NCL did not employ an adequate number of Medical Staff onboard the vessel to ensure proper management and supervision over the care of cruise passengers; and/or

    d.  Failure to warn Plaintiff that NCL lacked adequate procedures, policies or tools in place to ensure adequate communication between the shipboard Medical Staff and NCL's shoreside medical department, in order to ensure proper administration and prescription of medication.

66. At all times material hereto, NCL knew of the foregoing conditions, or the conditions existed for a sufficient length of time so that NCL, in the exercise of reasonable care under the circumstances, should have learned of them.  This knowledge was or should have been acquired through prior incidents involving NCL ship's doctors and/or nurses whom provided improper medical advice and/or treatment to passengers aboard NCL's vessels. *See, e.g., Begum v. NCL (Bahamas) Ltd.*, et al., Case No. 1:21-cv-20270 (on February 15, 2020, medical

personnel onboard NCL vessel provided inadequate treatment and improper medication to cruise passenger, resulting in sepsis); *L'Homme v. NCL (Bahamas) Ltd.,* Case No. *1:20-cv-24718* (on January 20, 2020, medical personnel onboard NCL cruise ship prescribed and administered medication that was improper in type and dosage, resulting in passenger's organ failure); *Watsky v. NCL (Bahamas) Ltd*., Case No. 1:21-cv-21045 (on October 19, 2019, medical personnel onboard NCL vessel incorrectly catheterized and administered improper medication, resulting in medical complications and aggravation of cruise passenger's condition); *Ford as Next Friend of Doe v. NCL Bahamas Ltd.*, 17-CV-24404, 2019 WL 3937127 (S.D. Fla. June 4, 2019) (alleging medical care provided by Defendant's shipboard medical personnel, including the improper administration of medication, fell below the reasonable care standard).

67. As a direct and proximate result of NCL's negligent acts and/or omissions set forth in Paragraph 65, Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future.  The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future.

**WHEREFORE,** Plaintiff demands judgment against NCL for all damages recoverable by law, and demands a jury trial of all issues so triable.

Dated:  June 6, 2024

LIPCON, MARGULIES
& WINKLEMAN, P.A.
*Attorneys for Plaintiff*
2800 Ponce de Leon Boulevard,
Suite 1480
Coral Gables, Florida 33134
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

By: */s/ Brandon P. Volk*
    **JACQUELINE GARCELL**
    Florida Bar No. 104358
    jgarcell@lipcon.com
    **BRANDON P. VOLK**
    Florida Bar No. 1019012
    bvolk@lipcon.com